THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KIMBERLY CUTTLE,<br><br>Plaintiff,<br><br>v.<br><br>DARDEN RESTAURANTS<br>And/or<br>LONGHORN STEAKHOUSE<br>And/or<br>DARDEN GC CORP<br><br>Defendant. | 10 CV 5657<br>Judge<br><br>Magistrate<br>**Plaintiff Demands Trial By Jury** |

## COMPLAINT

NOW COMES Plaintiff, Kimberly Cuttle ("Cuttle" and/or "PLAINTIFF"), complaining against Defendant, Darden Restaurants ("Darden" and/or "DEFENDANT"), and in so doing states as follows:

### NATURE OF THE CASE

1.  In this Complaint, Plaintiff Kimberly Cuttle seeks redress for Defendant's retaliation for complaints against Defendant's and/or gender discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq. ("Title VII").

### PROCEDURAL REQUIREMENTS

2.  Plaintiff fulfilled all conditions precedent to the institution of this action under Title VII, as amended by the Civil Rights Act of 1991

3.  Plaintiff filed a "Charge of Discrimination" with the Equal Employment Opportunity Commission on alleging violations of Title VII

1

4. The commission issued a "Notice of Right to Sue". *See Notice of Right to Sue, attached hereto as Exhibit "A"*

5. Plaintiff has timely filed this lawsuit within ninety (90) days from the date of the *Notice of Right to Sue.*

## JURISDICTION AND VENUE

6. This Court has jurisdiction pursuant to Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981, as amended, and 28 U.S.C. §1331 and §1343

7. Venue is proper in this judicial district under 28 U.S.C. §1391(b) and (c) because the Plaintiff and Defendant either reside in this judicial district and/or because a substantial part of the events or omissions giving rise to the claim occurred within this judicial district.

## PARTIES

8. Plaintiff Kimberly Cuttle is a female that resides in Illinois, within the Northern District of Illinois

9. Defendant Darden is a corporation engaged in business and with offices in this Judicial District.

10. Defendant is a very large corporation, owning and operating thousands of restaurants including the Longhorn Steakhouse chain.

11. Plaintiff was employed as a manager of a Longhorn Steakhouse, but Plaintiff might be considered an employee of "Darden Resturants" or "Darden GC".

12. Defendant Darden is engaged in an industry affecting commerce and employs more than fifteen (15) employees and is an employer within the meaning of Sections 701(b) and (h) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000, et seq.

## FACTS UPON WHICH CLAIMS ARE BASED

13. Plaintiff was an employee of Defendant pursuant to Title VII

14. Defendant is an employer as defined by Title VII

15. DARDEN does business in Illinois.

16. At all relevant times, Plaintiff performed her job responsibilities in a manner that met and or exceeded Defendant's legitimate expectations.

17. On a continuing, ongoing and escalating basis from around November of 2009, Plaintiff was subjected to repeated and, innuendo, suggestive sexual comments, degrading and derogatory remarks, and discriminatory, differential and unfair treatment because of her gender.

18. The unwelcome discrimination affecting and concerned the terms, conditions, and responsibilities of Plaintiff's employment with Defendant.

19. Respondent treated Complainant differently than male employees in the terms, privileges, benefits, responsibilities, and conditions of their employment. The discriminatory conduct included, however was not limited to, the following:

    a. allowed males to engage in fraternization but terminated females for attending authorized work related charity events and claiming that such authorized work was fraternization.;

    b. Forced Complainant to wear sexually degrading official work clothing;

    c. Failed to investigate or properly discipline male employees for sexually harassment and/or gender discrimination.

    d   other differential treatments

20. At all times relevant herein, Complainant was performing all of her job duties/responsibilities in an outstanding manner and there was no legitimate non-discriminatory reason for Respondent's termination of Complainant. Complainant was a dedicated,

hardworking, and loyal employee that contributed to Respondent's business in a substantial and meaningful manner.

21. On an ongoing basis, Defendant subjected Plaintiff to offensive, unwelcome, and sexually abusive hostile work environment and gender discrimination

22. Specifically, Plaintiff alleges that retaliation as follows:

   i. On or around December of 2009 Respondent General Manager Dan Stuart ordered the Complainant a replacement work coat and a gift of a sweatshirt. Mr. Stuart, without any participation or agreement by Complainant ordered the official work shirt and the gift shirt with the word "Cougar" embroidered on the front left side of the shirts. On the right side of each of these shirts was the logo "Longhorn Steakhouse". Complainant received the new work shirt in February of 2010 and expressed dismay and shock that such a sexist and sexualized 'nickname' was placed on her official work shirt without her permission, consent or request. The work shirt was to be worn while at work, and worn while conducting business with her employees and customers. The term "Cougar" is a slang term for an older female that is sexually aggressive towards younger males.

   ii. Initially Complainant avoided wearing this embarrassing work shirt by wearing her older, worn and ragged training shirt. Sometime in mid to late February 2010 the Complainant's training shirt 'disappeared' and Complainant now was forced to wear the sexually degrading "Cougar" shirt while conducting her work duties.

   iii. Shortly after having been forced to wear the Cougar shirt, Complainant complained to Mr. Stuart about the shirt, sexual name on it and the sexually discriminatory use of the work shirt. Complainant noted in her complaint that no males had to have sexually degrading 'nick names' on their shirts and infact most, if not all, had their

        actual names embroidered on the shirts.

   iv.  Shortly after this complaint regarding the sexually harassing and sexually discriminatory treatment the Complainant was subject to a series of retaliations and continued discriminatory actions leading to her termination.

      D.  Respondent took no known action other than suspend and/or termination of Complainant, however, Respondent also took a series of retaliations including the following:

i. on 3/2/10 Respondent attempted to transfer the Complainant from her location, which was close to her residence, to a location a very long distance from her residence.

ii. On 3/3/10 Shawn Richards (Director) called Complainant at home at approximately 9 PM and stated that Dan Stuart and Shaun were "out to get her".

iii. On 3/6/10 Respondent employee Dan Stuart removed Complainant from working a scheduled extra paid shift at another location; first claiming Complainant could work at the Bolingbrook IL location, then claiming that location did not need extra staff; thus depriving Complainant of an additional days pay.

iv. On 3/7/10 Respondent conspired with other male employees to concoct complaints against the Complainant.

v. On 3/8/10 Shawn Richards called Complainant at home and claimed there were accusations made against Complainant and she was 'suspended'. During this discussion Mr. Richards stated that the claims would increase Complainant's "Puma status". Complainant was confused by the comment and asked for clarification, Mr. Richards claimed he was joking and trying to make light of the situation.

vi. On 3/9/10 Complainant called Employee Relations for Respondent and complained

about the above discrimination and retaliations.

vii. On 3/10/10 Complainant received a voice mail from Mr. Richards claiming Complainant had not shown up for her work shift. This message was a complete reversal as the last communication from anyone member of management (not employee relations) was from Mr. Richards on 3/8/10 stating Complainant was "suspended". At no time did anyone advise Complainant that the suspension was rescinded.

viii. Complainant again contacted Employee Relations and spoke to J. Henderson and/or other Employee Relations employees asking if she was suspended. Employee Relations stated that Richards denied that Complainant was suspended. Complainant asked if she was supposed to report to work and Employee Relations told her to do so.

ix. On 3/10/10 Complainant formalized her prior complaints of sexually harassing behavior and gender discrimination with a four (4) page email to the Employee Relations employee J. Henderson.

x. On 3/11/10 Complainant returned to work but Complainant taken to a meeting across the street at a Starbucks with Mr. Richards. Mr. Richards asked if she ever socialized with any employees at her house, or outside work? Comp denied socializing outside of work at non-work functions. Complainant was then (again) suspended by Richards.

xi. From 3/11/10 to 3/25/10 Complainant was on paid suspension.

xii. On 3/25/10 Complainant was again summoned to the Starbucks across the street from the restaurant and shown a cell phone picture of Complainant and an employee at a work sponsored charity event. Complainant was accused of "fraternization". Richards asked to have the photo "explained"

xiii. On 3/25/10 Complainant emailed her "explanation" to Employee Relations, and stated that the photo was from August of 2009 and was a work sponsored event at which

6

    Respondent employees and managers freely mixed and even consumed alcohol together including Richards. Complainant further explained the photo was of the Complainant and an employee leaving the event and walking to their cars. Complainant emailed photos of the event to Employee Relations including photos of Richards engaging in drinking with employees.

xiv. On 3/26/10 Complainant was again summoned and Richards stated Complainant was terminated for "violation of company policy". This termination took place at a "Pot-Belly Sandwich shop" near the Complainant restaurant.

.

23. Complainant was terminated on April 26 2010 for pretextual reasons

24. Plaintiff hereby states that this complaint is drafted in accordance with the provisions of Federal Rules of Civil Procedure for "Notice Pleading" and not "Fact Pleading" in fulfillment of Rule 8(a), which requires that a claim for relief need contain, in addition to a statement concerning jurisdiction and a demand for judgment, that Plaintiff is entitled to relief.

25. All allegations and claims alleged herein should be read in the alternative, to the extent such an interpretation is necessitated by law.

## COUNT I

### Gender Discrimination and Retaliation under Title VII

26. Plaintiff incorporates and realleges all paragraphs found in the Complaint as if fully set forth herein against Defendant.

27. At all times relevant to this cause of action, Plaintiff was a "person" and "employee" of Defendant, and Defendant was her "employer" covered by and within the meaning of Title VII.

28. At all times relevant to this cause of action Richards and other relevant human resources personnel and supervisory employees were all "agents" of Defendant covered by and within the meaning of Title VII.

29. The actions of Defendant as perpetrated by its agents and as described and complained of above, are unlawful employment practices in that they likely have the effect of discriminating against, depriving and tending to deprive equal employment to, and otherwise adversely affecting Plaintiff because of her sex, in violation of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000(e), et seq.

30. At all times relevant to this cause of action, Defendant had a duty under Title VII to refrain from discriminating against Plaintiff based on her gender and Defendant had a duty under Title VII to prevent the gender discrimination and retaliation.

31. Plaintiff has a federally protected right to work in a workplace that is free from sexual harassment and gender discrimination.

32. Plaintiff reported sexual harassment, gender/sex discrimination, and hostile work environment on numerous occasions to management and supervisory employees of Defendant.

33. Despite knowledge of the hostile work environment, and despite repeated reports and complaints by Plaintiff, Defendant refused to take any action to investigate, remediate, stop, prevent, or otherwise address the ongoing discrimination and harassment rather committed retaliation against Plaintiff for her complaints.

34. Defendant intentionally subjected Plaintiff to unequal and discriminatory treatment by creating a hostile and abusive work environment that altered the conditions of Plaintiff's employment and by knowingly failing and refusing to protect Plaintiff from those hostile and abusive conditions.

35. The discriminatory actions by Defendant, through their management agents and employees, were intentional and willful, and in deliberate disregard of and with reckless indifference to the federal laws, state laws, and the rights and sensibilities of Plaintiff.

36. Defendant, by and through its agents, engaged in the foregoing acts and conduct when it knew or should have known that the same were in violation of Title VII and any alleged reasons to the contrary are pretextual.

37. Defendant maintains a work environment that is sexually hostile and that discriminates against female employees.

38. The actions of Defendant in intentionally engaging in and condoning sexual harassment against Plaintiff has caused Plaintiff great mental anguish, humiliation, degradation, physical and emotional pain and suffering, inconvenience, lost wages and benefits, future pecuniary losses, and other consequential damages.

39. Plaintiff complained on numerous occasions to a number of persons of authority for Defendant.

40. Plaintiff complained of the sexual discrimination and harassment to a number of persons of authority

41. Plaintiff received no assistance from any of these complaints.

42. Plaintiff endured the hostile atmosphere for as long as she could, finally in desperation she provided to Human Resources (Hereinafter referred to as "HR") a written complaint.

43. HR, like all prior agents of the Defendant, failed to investigate, failed to correct and actually encouraged the retaliation of Richards.

44. Immediately after the complaint, Richards retaliated against the Plaintiff.

**WHEREFORE**, Plaintiff respectfully requests:

a. All wages and benefits Plaintiff would have received but for the discrimination, including pre-judgment interest;

b. Compensatory damages in an amount to be determined at trial to compensate Plaintiff for the depression, humiliation, anguish, and emotional distress, caused by Defendant's conduct;

c. Defendant be required to pay prejudgment interest to Plaintiff on these damages;

d. A permanent injunction enjoining Defendant from engaging in the discriminatory practices complained of herein;

e. A permanent injunction requiring Defendant adopt employment practices and policies in accord and conformity with the requirements of Title VII, 42 U.S.C. § 2000e et seq.;

f. The Court retain jurisdiction of this case until such time as it is assured that Defendant have remedied the policies and practices complained of herein and are determined to be in full compliance with the law;

g. Punitive damages as a result of Defendant's deliberate, intentional, willful, wanton and malicious conduct;

h. An award of reasonable attorneys' fees, costs, and litigation expenses; and

i. Such other relief as the Court may deem just or equitable.

### JURY DEMAND

Plaintiff demands trial by Jury on all counts so triable.

Respectfully submitted,

By: _____/S/ John C. Ireland __

Attorney for Plaintiff

The Law Office of John C. Ireland
1921 Charles Lane
Aurora Illinois   60505    630-464-9675    FACSIMILE 630-206-0889
Attorneyireland@gmail.com          Atty4employees@aol.com
Attorney Number 6283137